UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

NORMAN SANDERS (#197433)                                CIVIL ACTION

VERSUS

N. BURL CAIN, ET AL.                                    NO. 14-216-BAJ-RLB

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on February 19, 2016.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**NORMAN SANDERS (#197433)**                                   **CIVIL ACTION**

**VERSUS**

**N. BURL CAIN, ET AL.**                                              **NO. 14-216-BAJ-RLB**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court are the defendants' Motions for Partial Summary Judgment (R. Docs. 15 and 25). The Motions are opposed. *See* R. Doc. 47.

The *pro se* plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Warden N. Burl Cain, Ass't Warden Cathy Fontenot, Ass't Warden Tim Delaney, Ass't Warden Kevin Benjamin, Chaplain Supervisor Robert Toney, and Chaplain Bernadine St. Cyr, complaining that the defendants have violated his federal constitutional and statutory rights by "conspiring, discriminating and retaliating against him - denying him free exercise religious rights – and equal protection – and retaliating for his use of grievance procedure and petitioning the government for redress." *See* Rec. Doc. 1 at p. 4.

The defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, certified copies of the plaintiff's pertinent administrative remedy proceedings, certified copies of pertinent portions of the plaintiff's Master Prison Record, a list and rap sheets of Mormon inmates, Camp C Religious Attendance Rosters from July 2010 to January 2011, LSP Directive No. 23.002 & Posted Policy No. G-01, Monthly Chaplains Department Schedules for April & May 2010, and the Affidavits of Gary Sumrall, Bernadine St. Cyr, James Toney, N.

Burl Cain, Kevin Benjamin, Tim Delaney, and Cathy Fontenot.  The plaintiff opposes the defendants' Motions relying upon the pleadings, a Statement of Disputed Facts, and his own Declaration submitted under penalty of perjury.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Rule 56, Federal Rules of Civil Procedure.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.  *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248.  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.  *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075.  In resolving a motion for summary judgment, the Court must

review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

In his Complaint as amended, the plaintiff alleges that between 2007 and 2010, he acted as a Mormon inmate minister at the main prison complex at LSP but, in April, 2010, he was transferred to Camp C at LSP in retaliation for an administrative grievance that he filed relative to alleged discrimination against Mormon practitioners at LSP. Thereafter, while at Camp C, he filed a second administrative grievance complaining that prison officials were violating his right to freely practice his religion because he was not being allowed to travel to the main prison complex for Mormon worship as the practitioners of other faiths were allegedly allowed to do. According to the plaintiff, he was thereafter retaliated against by prison officials, specifically by defendant Tim Delaney, through an alleged false disciplinary charge in October 2010, pursuant to which the plaintiff was maintained in punitive segregated confinement for a period of approximately a year and lost his trustee and minister status. Upon release from segregated confinement in November or December, 2011, he allegedly requested reinstatement of his trustee and minister status but was informed that the LSP Chaplain's Department had decided, upon review, not to reinstate the plaintiff as a Mormon inmate minister. The plaintiff complains that, as a result of that decision, he was again not allowed to attend Mormon worship services at the LSP main prison or allowed to open a Mormon ministry at Camp C. Although the plaintiff allegedly wrote letters to defendants Robert Toney, Cathy Fontenot and Burl Cain regarding the reinstatement of his minister and trustee status and authorization to attend services at the main prison, the defendants failed to respond to the plaintiff's correspondence.

Finally, in September, 2012, the plaintiff filed an administrative grievance regarding the "denial of religious rights, equal protection, and retaliation by LSP administrative officials for being denied right to attend Mormon religious services at main prison for almost a year, while administration officials allowed other inmates right to attend religious services from out camps to main prison." According to the plaintiff, within a week of filing that grievance, he was transferred from Camp C back to the main prison complex and was then "finally able to attend Mormon services." Notwithstanding, approximately two months later, in November, 2012, a problem began to develop because certain inmate clerks were refusing to allow the plaintiff and other Mormon inmates to use the media equipment during religious meetings. When the plaintiff complained to defendant Chaplain Bernadine St. Cyr regarding this problem on December 3, 2012, defendant St. Cyr "acted belligerent" and did nothing to resolve the problem. Instead, several days later, when a co-inmate complained to defendant Kevin Benjamin about the same problem on December 5, 2012, the plaintiff was told to pack his belongings for transport to Camp D at LSP. When the plaintiff asked why he was being transferred, defendant Benjamin allegedly responded that the plaintiff "should think about filing all them lawsuits and [grievances]."

As a result of the foregoing, the plaintiff complains that he was once again transferred to an LSP out camp and, once again, has been "deprived of his free exercise rights to worship and deprived of participation in programs granted to other inmates, [*i.e.,* attendance at services at the main prison] ... for exercising his First Amendment right to file grievances and petition the government for redress." In his "Claims for Relief," he includes the assertions that from 2010 to 2014, defendants Burl Cain and Cathy Fontenot have conspired to discriminate and retaliate by intentionally "denying plaintiff the right to attend Mormon services at main prison from

outcamps," that defendant Kevin Benjamin transferred the plaintiff to Camp D in December, 2012, in retaliation for complaining of the violation of prison rules, that defendant Robert Toney was an "indirect participant in depriving plaintiff of his religious rights" by ignoring the plaintiff's letters in 2012, and that defendant Bernadine St. Cyr "discriminated against plaintiff in doing nothing to correct problem after complaining of misuse and denial of media equipment by inmate clerks." The plaintiff prays for nominal and punitive damages against each defendant and for declaratory and injunctive relief, compelling the defendants, *inter alia*, to "[a]llow plaintiff to attend Mormon religious service at main prison while at outcamps" and "[r]estore to plaintiff inmate minister status and privileges that he previously enjoyed."

## Duplicative Claims

Addressing first the plaintiff's claims asserted against defendants Burl Cain, Cathy Fontenot and Tim Delaney, the plaintiff concedes that he filed a prior lawsuit in which these three defendants are named as parties and wherein he complains of the alleged violation of his First Amendment constitutional rights and his rights arising under federal statutory law based upon his transfer to an LSP out camp in 2010, upon alleged retaliatory disciplinary charges levied against him at that out camp, and upon his alleged inability to participate in programs or practice his religious faith because of the refusal of LSP officials to allow him to attend Mormon services at the main prison complex. *See Norman Sanders v. N. Burl Cain, et al.*, Civil Action No. 11-0227-JJB-RLB. In that proceeding, the plaintiff's claims regarding retaliatory disciplinary charges and refusal of LSP officials to allow him to attend Mormon services at the main prison complex were dismissed for failure of the plaintiff to exhaust his administrative remedies prior to filing suit. It appears from the record that the plaintiff has now exhausted his

administrative remedies with regards to the refusal of LSP officials to allow him to attend Mormon services at the main prison complex, and this claim will be considered below.

The plaintiffs other claims against these defendants were also dismissed on summary judgment.  Said claims consists of retaliatory transfer to Camp C in April of 2010, the plaintiff's free exercise of religion claims concerning the refusal to allow Mormons to worship on Sundays at the main prison complex, the refusal to allow club status for Mormons, and the plaintiff's inability to congregate with fellow members of his faith or hold fund-raisers due to his transfer to Camp C, and the plaintiff's equal protection claims regarding the same.  Pursuant to the plaintiff's motion, his appeal was dismissed as of September 10, 2015.

In this regard, it has been recognized that "[a] case may be dismissed as malicious if it duplicates claims that the same plaintiff has raised in previous or pending litigation." *Lewis v. Secretary of Public Safety and Corrections*, 508 F. App'x. 341, 343-44 (5th Cir. 2013), *cert. denied*, 133 S.Ct. 2802 (2013).  "A case is duplicative if it involves 'the same series of events' and allegations of 'many of the same facts as an earlier suit.'" *Id.*  Upon a finding by the Court that the plaintiff's claims asserted against defendants Cain, Fontenot and Delaney in the present matter, pertaining to actions taken prior to and from April through September of 2010, are essentially duplicative of the claims asserted in the referenced prior case, his claims asserted herein against these defendants are subject to dismissal as being legally frivolous within the meaning of 28 U.S.C. §§ 1915(e) and 1915A.

### Exhaustion of Administrative Remedies

The defendants assert that the plaintiff failed to exhaust administrative remedies, as mandated by 42 U.S.C. § 1997e, relative to his claims that defendants Benjamin and Fontenot transferred him to Camp D, in August of 2014, in retaliation for his use of the prison grievance

procedure. Pursuant to 42 U.S.C. § 1997e, the plaintiff was required to exhaust administrative remedies available to him at the prison prior to commencing a civil action in this Court with respect to prison conditions.[1] This provision is mandatory and applies broadly to "all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Further, a prisoner must exhaust administrative remedies by complying with applicable prison grievance procedures before filing a suit relative to prison conditions.  *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004).  Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  One of the principal purposes of the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'" *Johnson v. Johnson*, *supra*, 385 F.3d at 516, *quoting Porter v. Nussle*, *supra*, 534 U.S. at 525.  Further, the degree of specificity necessary in a prisoner's grievance should be evaluated in light of this intended purpose. *Id.*

Pursuant to a prior Report and Recommendation (R. Doc. 46), the Magistrate Judge has recommended that the defendants' Motion for Summary Judgment (R. Doc. 31), be granted as to the plaintiff's claim of retaliation pertaining to his transfer to Camp D in August of 2014, and that the claim be dismissed with prejudice.  As to the loss of his status as an inmate minister, the plaintiff alleges in his Complaint that after being notified that his status as an inmate minister would not be restored, he spoke to one of the chaplains at Camp C regarding the matter, and also wrote letters to defendants Toney, Fontenot, and Cain.  After receiving no responses, the plaintiff

---

[1] 42 U.S.C. § 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

alleges that he filed an ARP ("LSP-2012-3715") complaining of the denial of religious rights, Equal Protection, and retaliation for being denied the right to attend Mormon services at the main prison for almost a year. A review of the referenced administrative proceeding, as well as all others contained in the record, reflects no complaint regarding the plaintiff's status as an inmate minister or the allegedly false disciplinary charges levied by defendant Delaney which resulted in the loss of the said status. Accordingly, the plaintiff's claims regarding his status as an inmate minister and the allegedly false disciplinary charges levied by defendant Delaney should be dismissed for failure of the plaintiff to exhaust his administrative remedies prior to filing suit.

### Qualified Immunity

The defendants next assert that they are entitled to qualified immunity in connection with the plaintiff's remaining claims. Specifically, the defendants contend that the evidence will show that the defendants did not in fact violate the plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir.2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id*. The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id*. The assertion of the qualified immunity defense alters the summary judgment burden of proof.

*Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir.2005).  Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir.2008), *citing Michalik v. Hermann*, *supra*, 422 F.3d at 262.

## Conspiracy

The plaintiff asserts in his Complaint that, "The actions of defendant Cathy Fontenot in denying plaintiff the right to attend Mormon services at main prison from outcamps (2010-2014) were conspiratorial…" and that, "Defendant and co-conspirator Robert Toney was an indirect participant in depriving plaintiff of his religious rights by ignoring his letters seeking his inmate minister status, and request to attend Mormon services from outcamps…"  These allegations are conclusory, and mere conclusory allegations of a conspiracy to violate the plaintiff's constitutional rights are not cognizable under § 1983.  *See Hale v. Harney*, 786 F.2d 688, 690 (5th Cir. 1986); *Decker v. Dunbar*, 633 F. Supp. 2d 317, 358 (E.D. Tex. 2008).

## Informal Requests for Intervention

The plaintiff's assertion that defendants Toney, Fontenot, St. Cyr, and Cain failed to respond to his informal requests regarding his inmate minister status, attending Mormon services at the main prison, and for intervention regarding the use of media equipment, fails to state a meritorious claim inasmuch as an inmate plaintiff is not constitutionally entitled to an investigation into his administrative claims or informal complaints, or to a fair or favorable response thereto.  *See Mahogany v. Miller*, 252 Fed. Appx. 593 (5th Cir. 2007).  *See also Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (holding that an inmate "does not have a

federally protected liberty interest" in having his administrative claims resolved to his satisfaction and that a claim "arising from the alleged failure to investigate his grievances is indisputably meritless"). Accordingly, the plaintiff fails to state a cause of action under § 1983 relative to the alleged failure of defendants Toney, Fontenot, St. Cyr, and Cain to respond to his informal requests for intervention.

**Transfer to Camp D – Retaliation**

Turning to the plaintiff's claim of retaliation against defendant Benjamin, the plaintiff asserts that following the filing of an ARP in September of 2012 by the plaintiff and inmate Ronald Washington, and after a co-inmate complained to defendant Benjamin on December 5, 2012, that Mormon inmates were being obstructed by other inmates in using the video equipment, the plaintiff was told to pack his belongings on December 15, 2012, for a transfer to Camp D. The plaintiff further asserts that when he questioned defendant Benjamin regarding the transfer, the defendant made a reference to the plaintiff's prior lawsuits and grievances. Notwithstanding, the Court concludes that the plaintiff's assertions are not sufficient to state a claim of retaliation based upon the plaintiff's exercise of his constitutional rights.

In this regard, the taking of action against an inmate in retaliation for the inmate's exercise of constitutional rights may itself amount to a violation of the inmate's constitutional rights. *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996). Claims of retaliation by prison inmates, however, are regarded with skepticism, lest the federal courts potentially embroil themselves in every adverse act that occurs within a penal institution. *Id.* at 1166. Accordingly, to prevail on a claim of retaliation, a prisoner must establish (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendant intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse

retaliatory action, greater than *de minimis*, was undertaken against the prisoner by the defendant, and (4) that there is causation, *i.e.*, that "but for" the retaliatory motive, the adverse action would not have occurred. *Morris v. Powell*, *supra,* 449 F.3d at 684. *See also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). If an inmate is unable to point to the exercise of a specific constitutional right, his claim will fail as a matter of law. *See Tighe v. Wall*, 100 F.3d 41 (5th Cir. 1996) (dismissing an inmate's claim for failure to demonstrate the exercise of a specific constitutional right); *Woods v. Smith, supra*, 60 F.3d at 1166 (observing that, "[t]o state a claim of retaliation an inmate must allege the violation of a specific constitutional right"). Further, the inmate must allege more than a mere personal belief that he is the victim of retaliation. *Jones v. Greninger, supra,* 188 F.3d at 325; *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997). Finally, to demonstrate the requisite retaliatory intent on the part of a defendant, the inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly by inferred. *Woods v. Smith, supra,* 60 F.3d at 1166.

In the present matter, the causation element of the plaintiff's retaliation claim is lacking. Defendant Benjamin states in his affidavit (R. Doc. 17-2, p.7) that John Balfa, an inmate clerk in the Interfaith Chapel, expressed concerns to him regarding the plaintiff's use of a television at the Interfaith Chapel. Balfa did not want to allow the plaintiff to use the television unless it was approved by security due to problems he had experienced with the plaintiff in the past. Accordingly, defendant Benjamin made the decision to transfer the plaintiff to Camp D in December of 2012, to try to avoid further problems with the plaintiff with security and other inmates. Defendant Benjamin states that the decision to transfer the plaintiff to Camp D was solely based on security concerns.

Furthermore, there is nothing in the record to suggest that inmate Ronald Washington, who filed a similar grievance at the same time as the plaintiff (months before the transfer), was also transferred to Camp D, which would be expected if the plaintiff's transfer had been undertaken in retaliation for his grievance. The plaintiff has not shown that "but for" retaliatory motive, the adverse action would not have occurred.

### Cessation of Transport from Out Camps to the Main Prison for Religious Services and/or Callouts – Retaliation

The plaintiff asserts that a travel ban was instituted against him, beginning in 2010, in retaliation for filing an administrative grievance on April 6, 2010 ("LSP-2010-1028"). As a result, the plaintiff cannot attend Mormon services at the main prison.

The causation element of the plaintiff's retaliation claim is again lacking. The affidavits of defendants Cain, Delaney, Toney, and Fontenot state that, beginning sometime in 2010, the prison instituted an institutional wide cessation of transporting inmates from out camps to the main prison to attend religious services and/or callouts due to budgetary issues and staffing shortages. *See* R. Docs. 17-1, p. 8; 17-2, p. 3 and 10; and 27-1, p. 4. There is nothing in the record to indicate that this was directed only at plaintiff. The plaintiff has not shown that "but for" retaliatory motive, the adverse action would not have occurred.

### Free Exercise of Religion

Turning to the plaintiff's claim that his religious rights were violated by various LSP officials prohibiting the plaintiff from attending Mormon services in the main prison, this claim is asserted under the Free Exercise Clause of the First Amendment, RLUIPA, and the Equal Protection Clause of the Fourteenth Amendment.

The Free Exercise Clause of the First Amendment, as applied to the states through the Fourteenth Amendment, prohibits conduct which unreasonably impinges upon the free exercise of an inmate's religious beliefs. While inmates retain their First Amendment religious rights notwithstanding their incarcerated status, the exercise of these rights is subject to reasonable restrictions and limitations necessitated by penological goals. *O'Lone v. Shabazz*, 482 U.S. 342, 349 (1987). *See also Baranowski v. Hart*, 486 F.3d 112, 120 (5th Cir. 2007), *citing Turner v. Safley*, 482 U.S. 78, 89 (1987). A prison action or regulation that impinges upon an inmate's First Amendment constitutional rights is valid if it is reasonably related to legitimate penological interests. *Turner v. Safely*, *supra*, 482 U.S. at 89.

RLUIPA provides that government officials may not impose a substantial burden on the religious exercise of a person confined to an institution unless that burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc–1(a). Under RLUIPA, the plaintiff bears the initial burden of proving that a challenged government action "substantially burdens" his "religious exercise." *Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599, 613 (5th Cir. 2008). If the plaintiff meets that burden, the burden shifts to the government to "demonstrate that its action was supported by a compelling interest and that the regulation is the least restrictive means of carrying out that interest." *Id*. "RLUIPA imposes a higher burden than does the First Amendment in that the statute requires prison regulators to put forth a stronger justification for regulations that impinge on the religious practices of prison inmates." *Id*. at 612. A government action imposes a substantial burden on religious exercise if it "truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Id*. at 613, *quoting Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004). Whether the government

action or regulation imposes a substantial burden on an adherent's exercise requires a case-by-case, fact-specific inquiry.  *Id*.  Although RLUIPA imposes strict scrutiny upon the imposition of certain religious limitations upon prisoners, the drafters of the statute were mindful that discipline, order and security are urgent in penal institutions, and they therefore anticipated that courts would apply the RLUIPA test "with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources."  *See Cutter v. Wilkinson*, 544 U.S. 709, 723, (2005).

      Addressing first the plaintiff's claim under RLUIPA, the Court concludes that the inability of the plaintiff to attend Mormon services at the main prison while housed in Camp C did not substantially burden his religious exercise.  In his deposition (R. Doc. 16), the plaintiff testified that while housed at Camp C, he conducted holy day services and two or three other inmates attended.  *See* R. Doc. 16, p. 34, ln. 18-21.  The plaintiff further testified that the Sunday services at Camp C were basically the same as the Monday services in the main prison, except that a typical Monday service at the main prison normally had nine to ten inmate attendants.  *See* R. Doc. 16, p. 32, ln. 23-25 and p. 52, ln. 1-6.  However, the Camp C Religious Attendance Rosters for July through September of 2010, show attendance at Mormon services and study to be between two and ten inmate attendants.  *See* R. Doc. 16-2, p. 2-18.

      The plaintiff also concedes that while housed at Camp D his opportunity to practice his religion voluntarily has never come to a stop.  *See* R. Doc. 16, p. 24, ln. 22-25.  He has simply never requested Mormon services at Camp D because he would like to worship and fellowship with the Mormons housed at the main prison.  *See* R. Doc. 16, p. 29, ln. 12-18.  The plaintiff also

acknowledges that he is able to speak about his faith with other inmates housed at Camp D, and talks about his Mormon faith to "whoever wants to listen." *See* R. Doc. 16, p. 27, ln. 7-19.

Essentially, the plaintiff is claiming only that the institutional wide cessation of transportation of inmates from out camps to the main prison for religious services curtails only his desire to fellowship with Mormon inmates housed at the main prison. The plaintiff has failed to show how the policy has substantially burdened his religious exercise, and the record demonstrates otherwise. The record reflects that while at Camp C the plaintiff had a place to conduct services on his holy day, and there were at least one or more Mormons or interested persons present at the services with whom he could congregate and worship. The plaintiff, through no fault of prison officials, has not even attempted to conduct services or attend callouts at Camp D.

The court now turns to the plaintiff's claim that his First Amendment constitutional rights have been violated by the defendants' conduct. To evaluate the reasonableness of a prison restriction, the court considers (1) whether the regulation or action has a logical connection to the legitimate governmental interests invoked to justify it; (2) whether the inmate has an available alternative means of exercising the rights; (3) the impact of accommodation on other inmates, guards, and prison resources; and (4) the presence or absence of ready alternatives that fully accommodate the prisoner's "rights at *de minimis* cost to valid penological interests." *Turner*, 482 U.S. at 89–91; *Baranowski*, 486 F.3d 112, 120–22 (5th Cir. 2007). In analyzing the availability to inmates of "alternative means" of exercising their religion, however, "[t]he pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith." *Adkins* 393 F.3d at 564.

"A court must determine whether the government objective underlying the regulation at issue is legitimate and neutral, and that the regulations are rationally related to that objective." *Freeman v. TDCJ*, 369 F.3d 854, 860 (5th Cir. 2004) (internal quotation marks and citation omitted). Due regard also must be given to the decisions of prison officials, because " 'prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations.' " *Turner*, 482 U.S. at 89 (omission and alteration in original) (*citing Jones v. N.C. Prisoners' Labor Union*, 433 U.S. 119, 128 (1977)).

Applying the *Turner* factors, it appears from the evidence that the institutional wide cessation of transporting inmates from the out camps to the main prison to attend religious services and/or callouts was reasonably related to the legitimate penological interest of costs and limited resources, as the policy was instituted due to budgetary issues and staffing shortages. As detailed above, the plaintiff was allowed to conduct services at Camp C on his holy day, with one or more Mormons are interested persons consisting of between two and ten inmates. Furthermore, there is nothing to suggest that the plaintiff has been unable to practice his religion or to employ additional alternative means of exercising his religious beliefs through, for example, unaccompanied prayer, meditation and study in his living quarters at Camp C or Camp D. While he may not be able to congregate in the specific manner he desires, he has not been "deprived of all forms of religious exercise" and may freely observe his religious customs. *See O'Lone,* 482 U.S. at 352.

Moreover, accommodation of the plaintiff's wish to attend services at the main prison complex, regardless of budgetary constraints and staffing shortages, would clearly tax the already limited time and resources of prison personnel and could "spawn a cottage industry of litigation and could have a negative impact on prison staff, inmates and prison resources." *See*

*Freeman v. Texas Department of Criminal Justice*, 369 F.3d 854, 862 (5th Cir. 2004).  *See also Turner v. Safely*, *supra* at 90 (noting that "[w]hen accommodation of an asserted right will have significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials").  Finally, the plaintiff has not proposed an alternative means of accommodation other than allowing him to unilaterally dictate to prison officials where he is allowed to live and practice his religious beliefs.  This is an accommodation that the Court may not reasonably impose upon prison personnel.  Accordingly, the Court finds that the plaintiff has failed to state a claim regarding the alleged violation of his First Amendment right to practice his religious faith.  *See O'Lone,* 482 U.S. at 353 (finding constitutional rights of Muslim inmates housed in a satellite building were not abridged due to failure of prison officials to transport them to the main prison facility for weekly religious services), and *Mumin v. Phelps,* 857 F.2d 1055, 1058 (5th Cir. 1988) (Islamic prisoners housed at an out camp at the Louisiana State Penitentiary at Angola were not entitled to be brought to the main facility to attend weekly services, and noting a possible alternative of each out camp conducting their own services).

  Finally, the plaintiff asserts a claim under the Fourteenth Amendment that his right to equal protection has been violated by the defendants' conduct.  In order to successfully establish an equal protection claim, the plaintiff must demonstrate that prison officials acted with a discriminatory purpose.  *Woods v. Edwards*, 51 F.3d 577 (5th Cir. 1995).  Discriminatory purpose in an equal protection context implies that the decision maker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group.  *Id*.  A violation of the equal protection clause occurs only

when the governmental action in question classifies or distinguishes between two or more relevant persons or groups.  *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988).

The plaintiff has alleged only that he has been denied the right to attend Mormon services at the main prison, while officials have allowed "other inmates" in out camps to attend religious services at the main prison.  The plaintiff's allegation has no evidentiary support.  Accordingly, the plaintiff has failed to establish that he, as a Mormon, was subjected to unequal treatment.

Despite notice and an opportunity to appear, the plaintiff has not come forward with any competent summary judgment evidence in opposition to the defendants' Motions for Summary Judgment or to the documentary evidence produced in support thereof.  The plaintiff's opposition memorandum (R. Doc. 47) merely restates the allegations of his Complaint, which are largely conclusory, and refers to unspecified exhibits not located within the record.  The plaintiff's Declaration (R. Doc. 47-2) is likewise largely conclusory and refers to unspecified exhibits not located within the record.  Accordingly, there is nothing before the Court which tends to dispute the defendants' assertions.  Based upon the plaintiff's failure in this case to designate specific evidence in the record of sufficient caliber and quantity to create a genuine issue for trial, the Court concludes that the defendants' Motions are well-taken and that, on the record before the Court, the defendants are entitled to summary judgment as a matter of law.

## RECOMMENDATION

It is recommended that the plaintiff's duplicative claims of retaliatory transfer to Camp C in April of 2010, the plaintiff's free exercise of religion claims concerning the refusal to allow Mormons to worship on Sundays at the main prison complex, the refusal to allow club status for Mormons, and the plaintiff's inability to congregate with fellow members of his faith or hold fund-raisers due to his transfer to Camp C, and the plaintiff's equal protection claims regarding

the same be dismissed as legally frivolous pursuant to 28 U.S.C. §§ 1915(e) and 1915A. It is also recommended that the plaintiff's claims regarding his status as an inmate minister and the allegedly false disciplinary charges levied by defendant Delaney be dismissed for failure of the plaintiff to exhaust his administrative remedies as required by 42 U.S.C. § 1997e. It is further recommended that the defendants' Motions for Summary Judgment (R. Docs. 15 and 29) be granted, dismissing all other claims of the plaintiff Norman Sanders asserted against the defendants with prejudice.

Signed in Baton Rouge, Louisiana, on February 19, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**